Chester P. SOLING, Plaintiff,

v.

NEW YORK STATE, New York State Thruway Authority and Triborough Bridge and Tunnel Authority, Defendants.

No. 91 Civ. 5906 (VLB).

United States District Court,
S.D. New York.

Oct. 15, 1992.

Chester P. Soling, pro se.

August L. Fietkau, Asst. Atty. Gen., Dept. of Law, State of N.Y., New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This is one of two overlapping lawsuits brought by the plaintiff asking the federal courts to declare invalid various practices of a state and state-created agency. In each lawsuit, plaintiff alleges that those agencies constitute non-elected bodies which charge tolls, amounting to taxes, not voted upon by elected representatives and used for purposes not approved by such representatives. For several reasons, discussed in greater detail below, I dismiss the complaint.

The analysis which follows establishes in some detail the reasons why plaintiff's complaint fails to state a claim on which relief may be granted. I have prepared the analysis for two reasons:

(1) so that, in recognition of the importance of access to the courts by individual citizens who challenge decisions in our system of government, as in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (one-person one-vote decision contrary to prior precedent), plaintiff will have had a full day in court and will obtain a

ruling discussing the merits of, as well as procedural barriers to, his claims; and

(2) so that further suits on overlapping grounds will be properly precluded in the future.[1]

### II

Plaintiff's pleadings in this action consist of a complaint and a further additional complaint.

1. Plaintiff's first claim in the original complaint is that New York State has established authorities (New York State Thruway Authority and Triborough Bridge & Tunnel Authority) which act as independent governments that impose tolls which amount to taxes without consent of the governed, which tolls are used in ways not decided upon by elected representatives, contrary to the constitutional guarantee of a republican form of government (Art. IV § 4).

2. The second claim in the original complaint alleges violation of the Federal Interstate Highway Act (23 U.S.C. § 129), which provides for an interstate highway system on which tolls are charged only to liquidate the cost of the highways and associated bonds. A subordinate claim asserts that the Authorities circumvent state sunset provisions by floating new and unrelated bonds with respect to which they continue to charge tolls.

3. The third claim in the original complaint alleges that the interstate highway system, initiated during the 1950s, was built partially for the purpose of facilitating national defense, and that the ability of bondholders to seize facilities for defaults imperils that objective.

Plaintiff's further additional complaint elaborates on the above points and adds the following claims:

4. Freedom of assembly guaranteed by the First Amendment is violated by obstruction of free use of roads.

---

1. Some courts have indicated that rulings made without discussion, while dispositive of the case then before the court, and even if constituting holdings on the facts, do not have full precedential value. *United States v. Morales*, 815 F.2d 725, 737 (1st Cir.), *cert. denied* 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987). Without the necessity of either adopting or criticizing this concept, I endeavor here to rule fully on each of plaintiff's contentions.

5. Imposition of tolls in some locations and not others "makes classes of people."

6. The state-related status of the Authorities facilitates failure to deliver services which have been charged for—a failure which would be actionable if a private party were responsible.

7. By issuing new bonds, the Authorities evade state law sunset provisions with respect to their authority to collect tolls.

Plaintiff's first lawsuit, *Soling v. New York State*, 91 Civ. 3372 (KTD), was against the State of New York but was predicated on essentially the same core grounds as the pending action. It was dismissed by Judge Duffy on May 24, 1991 *sua sponte*, citing the Eleventh Amendment, lack of case or controversy, and lack of standing.[2]

Rather than seeking reargument or leave to amend the complaint in 91 Civ. 3372, or filing a notice of appeal from Judge Duffy's ruling, plaintiff initiated this lawsuit on August 28, 1991. In this action, plaintiff has again cast New York State as a defendant, and he has added the New York Thruway Authority and the Triborough Bridge and Tunnel Authority as additional defendants.

 A *sua sponte* dismissal of a complaint should, absent unusual circumstances, be treated as technically *res judicata*. And the *res judicata* effect of such a *sua sponte* dismissal should apply as strictly to *pro se* as to other plaintiffs; the necessity for avoiding multiplicitous lawsuits is intuitively obvious to everyone— especially to one such as plaintiff here, who has made himself familiar with court procedure (see, in addition to this case and 91 Civ. 3372 (KTD), 91 Civ. 2922 [RWS], 1991

WL 79165, 90 Civ. 1349 [LBS], 90 Civ. 1348 [MGC]). The filing of such lawsuits multiplies litigation in an unacceptable and entirely improper manner. Plaintiff's current suit is impermissible because of the obvious waste of resources and confusion caused by multiple suits concerning overlapping claims. See *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1981).

### III

 Judge Duffy's ruling that there was no case or controversy under Article III of the Constitution and no standing on plaintiff's part to sue draws support from the long-standing doctrine that one may not utilize the courts to challenge *qua* "tribune of the people," governmental taxation or expenditures merely because one is a taxpayer (or, here, potential or actual tollpayer) or a citizen. For there to be a constitutional case or controversy, and for one to have standing, it is necessary to allege a specific injury more concrete in nature, or to allege injury to a constitutional right that cannot otherwise be protected. See *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). Here, plaintiff has not shown specific individualized injury which would create a case or controversy between him and defendants cognizable under Article III or give him standing to sue. The inclusion of the case or controversy requirement in Article III, and indeed the very language of Article III,[3] indicate that the Framers did not intend that the courts be dragged into disputes over public policy absent some con-

---

**2.** The present decision, while *sua sponte* in dismissing the case as to one defendant, is effective only after a 30 day period during which plaintiff may move for reconsideration if justified. Plaintiff already has had ample opportunity to be heard, and he will have further opportunity before the dismissal becomes final. In part because of the record of duplicative litigation by plaintiff, the present decision is somewhat more detailed than Judge Duffy's ruling.

**3.** It is obvious from, e.g., The Federalist No 78 (Hamilton) and other contemporary sources which need not be discussed in detail here that the courts were intended to decide only concrete controversies. "To decide ... we turn to the words ... read in their historical setting as revealing the purpose of [the] framers, and search for admissible meanings of [the] words which, in the circumstances of their application, will effectuate those purposes." *United States v. Classic*, 313 U.S. 299, 317–18, 61 S.Ct. 1031, 1039, 85 L.Ed. 1368 (1941) (Stone, J.).

crete reason for judicial intervention. Otherwise, every citizen, whether or not that citizen suffered specific harm, could challenge almost every governmental activity; this would tend to place the judiciary in the inappropriate role of exercising generalized supervision over the legislative and executive branches. It would create practical difficulties for the courts and would promote undue judicial interference with legitimate governmental activity.[4]

These textual, prudential and precedential considerations are buttressed by the reality that toll charges and uses of toll proceeds are more or less ordinary grist for the mill of democratic political controversy.[5] Motorists are hardly a discrete and insular minority who have been denied the right to vote or who are routinely outvoted and hence particularly subject to oppression. There is no reason to exercise enhanced scrutiny of dispositions to their disadvantage under broadly phrased constitutional provisions. See *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Powell, *Carolene Products Revisited*, 82 Colum.L.Rev. 1987 (1982); Dowling, *The Methods of Mr. Justice Stone in Constitutional Cases*, 41 Colum.L.Rev. 1160 (1941). Thus there is no claim in this case that interstate commerce has been unreasonably burdened by actions taken by the Authorities affecting out of state interests not represented by the state's elected officials. See *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 767–68 n. 2, 65 S.Ct. 1515, 1519 n. 2, 89 L.Ed.

1915 (1945). Nor is there any claim that plaintiff has personally suffered injury.

Nor, despite plaintiff's citation to the First Amendment guarantee of freedom of assembly, is there any indication of inhibition of any specific efforts to assemble or of any constraint on the right to speak, to make views known to elected representatives, or to vote one's convictions.

Under these circumstances, the political branches of government—the executive and the legislative—provide the appropriate fora for exploration of plaintiff's complaints.

Plaintiff, seemingly aware of the realities, seeks to sidestep them by pointing to the non-elected nature of the management of the two defendant Authorities. Plaintiff has apparently not, however, succeeded in convincing the responsible elected state officials that the policies or structure of the Authorities should be changed in the ways he proposes. If he and others were to do so and the state were then unable to effect its will, a different question might be presented.[6]

## IV

The Eleventh Amendment barrier to direct suit by citizens against a state, referred to by Judge Duffy in dismissing 91 Civ. 3372, is based on longstanding albeit nontextual judicial interpretation of that Amendment as creating state sovereign immunity; literally, the Eleventh Amendment merely bars invocation of diversity of citizenship jurisdiction to permit a citizen of one state to sue another state. See generally Gibbons, *The Eleventh Amendment and State Sovereignty: A Reinterpreta-*

---

4. Thus the constitutional guarantee of a republican form of government (Const., Art. IV § 4) has been held to be one to be enforced, certainly in the first instance, by the elected branches rather than by the courts. See *Baker v. Carr*, 369 U.S. 186, 224, 82 S.Ct. 691, 713, 7 L.Ed.2d 663 (1962).

5. I take judicial notice of the fact that Connecticut recently eliminated tolls on its major highways, in part because of public complaints of delays, pollution, traffic accidents and other disadvantages of highway tolls as a revenue-raising device.

6. Ability to amend statutes is generally limited only by constitutional protection of private contract rights or other vested rights, such as in this instance adherence to covenants needed to protect bondholders of the Authorities. See *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). In the present case, no collision would seem to be involved between bondholder rights and any rights plaintiff might seek to convince state elected officials to assert.

tion, 83 Colum.L.Rev. 1889 (1983). The Eleventh Amendment barrier can be overcome in several ways, including (a) consent on the part of the state, as in *Port Authority. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990),[7] (b) abrogation of the immunity by Congress pursuant to one of its constitutionally granted powers, as in *Hilton v. South Carolina Public Railways Comm'n*, —— U.S. ——, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991), or (c) suit for injunctive relief against state officials as in *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), based on a doctrine first articulated in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

It is unnecessary here to determine whether any of these means of avoiding the Eleventh Amendment applies, however, because no violation of federal law appears to exist.

## V

■ Plaintiff's invocation of the First Amendment must fail. Assuring motorists free highway transit by constitutional interpretation would seem to discriminate against non-motorists, creating the very "classes of people" which plaintiff deplores in, presumably, intending to invoke the Equal Protection Clause of the Fourteenth Amendment. See generally *Allegheny Pittsburgh Coal Co. v. Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).

However undesirable they may be on policy grounds in the view of plaintiff and perhaps many others, no such "classes" are created by toll roads, at least so long as other forms of transportation are also the subject of charges which may be debated as unduly constricting to the same or perhaps at times to a greater extent.

Plaintiff makes no viable claim that transportation policy currently discriminates against motor transport. Indeed, equally plausible arguments could be made that the very national highway program cited by plaintiff in support of his claims favors road transport at the expense of rail and other means of transportation, thus violating the equal protection concept included in due process of law guaranteed by the Fifth Amendment.[8] Rail transport was favored by federal involvement in promoting the construction of the transcontinental railways in the nineteenth century.[9] The Erie Canal, of course, subsidized waterborne transit when built. The scope of governmental involvement or noninvolvement in such matters is, absent factors not suggested here, entirely within the reasonably exercised judgment of the political branches rather than review by the judiciary.

## VI

■ Perhaps the most important underlying claim made by plaintiff is that it is improper for the state to utilize independently operating authorities which can collect funds in return for services and use them within broad ranges of discretion, because the managers of these institutions are not elected officials. If adopted, this position would preclude much forward planning and program reliability where deemed most efficient in limiting cost and providing public service. Indeed, the national highway program itself, cited by plaintiff in support of many of his assaults on the collection of tolls by the defendant Authorities, was long-term and self-executing, and involved collection of highway taxes and their direct disbursement for highway construction and maintenance without further resort to elected officials or appropriation acts.

---

7. *Feeney* left open the question of whether a further escape valve may be available with respect to entities such as the Authorities on the ground that they are not *alter egos* of the state because state funds are not directly at risk in their activities, 495 U.S. at 302, 110 S.Ct. at 1871.

8. See *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782

(1973); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

9. See *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); *Doherty v. Northern Pacific Co.*, 177 U.S. 421, 20 S.Ct. 677, 44 L.Ed. 830 (1900).

Moreover, the use of corporate entities created by statutes passed by elected officials to fulfill governmental objectives on a long-term basis, insulated from annual current expense governmental budgeting, has a long tradition and has never been held to violate any constitutional provision, even though this kind of structure, like any other which might be chosen, requires public vigilance to control potential abuses. See *M'Culloch v. Maryland,* 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819); C. Rossiter, *Alexander Hamilton and the Constitution* (1964); Hurst, *Alexander Hamilton: Law Maker,* 78 Colum.L.Rev. 483 (1978); e.g., Export–Import Bank Act, 59 Stat. 526 (1945); Federal Farm Loan Act, 39 Stat. 360 (1916) (creating independent Federal Land Banks).

The core of plaintiff's objection to the independent Authorities is, of course, their independence itself, which he regards as making them separate non-republican governments. That independence, however, is limited. Entities created by statute rather than by constitutional provision, at the federal as well as state or local levels, can be modified or abolished by statute, subject only to compensation for any taking of private property as guaranteed by the Fifth Amendment, Contract Clause of the Federal Constitution, or due process requirements of the Fourteenth Amendment. See in the current context, *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). Plaintiff has, presumably, not sought such statutory modification or abolition: nothing in his complaints suggests unavailability of such political remedy.

## VII

Plaintiff's claim of violation of federal highway laws is also flawed. There is no claim that the specific roads on which tolls are charged were paid for by federal funds or that the federal law preempted or prohibited independent state agency highway construction. Moreover, there is no suggestion in the statute that even if a basic case or controversy under Article III were present, private rights of action applicable to the situation involved here are created under the principles laid down in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) or its subsequent interpretations. See generally Sunstein, *Standing and the Privatization of Public Law,* 88 Colum.L.Rev. 1432 (1988).

## VIII

Plaintiff's claim of risk to national defense alleges no violation of any specific statutory or constitutional provision. The outer limits of Executive Branch standing to sue to protect vital national interests where no specific statute confers it are difficult to define. See, e.g., *United States v. Brand Jewelers,* 318 F.Supp. 1293 (S.D.N.Y.1970). But private suits not based on a specific statutory or constitutional provision do not have the benefit of the jurisdiction granted by 28 U.S.C. § 1345 which is available whenever a suit is brought by the United States.

While considerations of national security are relevant to judicial decisionmaking in some instances, e.g., *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), the constitutional goal of providing for the common defense must be implemented in the first instance by the political branches. The important role of the citizen in expressing concern about this subject must be implemented through speech, press and assembly protected by the First Amendment and by suffrage in the ballot box. It cannot be implemented by citizen suits seeking to have the federal judiciary assure that state authorities pay adequate heed to defense objectives.

## IX

Plaintiff further claims that the Authorities are not and cannot be held responsible for failures to provide service for which they charge, by implication arguing that they are not subject to suit under state law on claims which plaintiff believes are required by federal constitutional or statutory law to be justiciable. This contention could only be substantiated by showing unsuccessful attempts to hold the Authorities responsible in state court for conduct

required by federal constitutional or other law to be actionable.

No such effort is alleged. Plaintiff does not claim that the state courts were asked to provide compensation for interruptions of service or to refund any tolls charged during such interruptions. Consequently, even if a federal constitutional or statutory violation could be made out were the assumption correct, the complaint offers no grounds for its conclusory assertion that the assumption *is* correct. Fact pleading under Fed.R.Civ.P. Rule 8 must set forth enough information to show that a party is entitled to relief and cannot be satisfied by assertions of legal conclusions alone.

### X

Plaintiff claims that the Authorities seek to evade state sunset laws by continuing to issue new bonds so as to retain their ability to collect tolls. See generally *Special Project on State Regulatory Reform*, 1985 Ariz.St.L.J. No. 2.

Even if I were to exercise my discretion to retain this state law claim in federal court in view of the absence of any federal claim on which relief may be granted, there is no indication that state sunset provisions are to be interpreted as treating steps to make them inapplicable as constituting statutory violations. No factual allegations in the complaint indicate that the decisions of the Authorities which may have the effect of prolonging their right to collect tolls lack independent substance, or that they were merely undertaken to defeat sunset provisions. See *Associated Wholesale Grocers v. United States*, 927 F.2d 1517 (10th Cir.1991).

Further, even if the Authorities were acting improperly to perpetuate their powers, plaintiff has not, as already noted, shown personal injury of a kind permitting him to pursue the infractions in this court. Argument essentially suitable for legislative consideration rather than judicial intervention is provided by this complaint, filed by a plaintiff clearly familiar with judicial procedure.

### XI

While the current motion to dismiss is on behalf of New York State and the New York State Thruway Authority, those grounds for dismissal set forth above which are not based on the Eleventh Amendment apply with equal force to all three defendants. With respect to such grounds, the failure of plaintiff's pleadings to state claims on which relief can be granted is precisely the same as to all defendants. Accordingly there appears no reason why this dismissal should not benefit Triborough, even though it has not moved. Because, however, the dismissal as to Triborough is *sua sponte*, plaintiff is allowed 30 days to move for reconsideration. In the absence of such reconsideration, this case will be dismissed in its entirety 30 days from the date of this memorandum order.

### XII

For the reasons described above, the Clerk of this Court shall not accept any further complaints filed by plaintiff against the defendants in this case relating in any way to transportation or transportation policy unless plaintiff has obtained prior permission from the court. Any application for such permission filed by plaintiff must attach a copy of this memorandum order.

### XIII

Under Rule 11, Fed.R.Civ.P., the court is required to consider possible sanctions for filing groundless pleadings or failure to conduct proper investigation prior to filing of pleadings. This Rule is applicable to parties as well as counsel, but the party's level of legal sophistication is a factor in evaluating pleadings by nonlawyers. In this instance, plaintiff, while *pro se*, appears familiar with litigation procedure.

I conclude that, while plaintiff's claims are insufficient to justify relief, sanctions are inappropriate unless further overlapping lawsuits are filed. The opportunity to challenge existing legal concepts is an important component of access to the courts; under Rule 11 good faith efforts to change existing law are appropriate. In

plaintiff's complaints, no baseless factual allegations appear to have been made; instead, plaintiff's assertions are either too conclusory to form a basis for relief or do not state a claim on which relief can be granted even if taken as true. They are not, however, inherently so frivolous as not to invoke this court's jurisdiction to rule on their merit or lack of merit. See *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Duplicative litigation is, to be sure, clearly impermissible, and plaintiff must understand that further filing of overlapping pleadings may require sanctions.

SO ORDERED.