ELLIS, Judge:
This is a suit by 14 railroad companies operating in Louisiana for review of the determination by the Louisiana Tax Commission of the assessed valuation of their properties for 1978 ad valorem tax purposes.
Article 7, § 18 of the Constitution of 1974 provides, in pertinent part, as follows:
“(A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraph (C), shall be a percentage of its fair mar *42 ket value. The percentage of fair market value shall be uniform throughout the state upon the same class of property. “(B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:
“Classifications Percentages
1. Land 10%
2. Improvements for residential purposes 10%
3. Other property 15%

“(D) Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined' in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.”
R.S. 47:1853, which was-applicable for the first time in 1978, provides, in part, as follows:
“(A) In accordance with the provisions of this Section and Sections 1854 and 1855, the Louisiana Tax Commission shall, on or before September first of each calendar year, appraise, for taxation, public service properties based upon each company’s report, as defined in Section 1852(A) and such other information as may be available to the Louisiana Tax Commission. In the absence of a report the Louisiana Tax Commission shall appraise the properties of any company failing to file such a report upon any information which the Louisiana Tax Commission, in its best judgment, deems sufficient.
“(B) In appraising public service properties, the Louisiana Tax Commission shall employ all of the following nationally recognized techniques of appraisal, where applicable, to best determine fair market value: the market approach, the cost approach, and/or the income approach. However, all public service properties of the same nature and kind shall be appraised in the same manner. The appraised value of all lands owned by the company in this state shall be deducted from the total appraised value of the public service properties and shall 'be assessed by the Louisiana Tax Commission and shown as a separate item on the tax roll.
* * * * * *
“(E) The appraisal for the first year only shall be accomplished by the Louisiana Tax Commission through the use of an independent appraisal firm or firms qualified in the appraisal of public service properties.”
Pursuant to the mandate of R.S. 47:1853(E), the Tax Commission entered into a contract with Thos. Y. Pickett & Company, Inc. to appraise the properties of plaintiffs, and other railroads, in Louisiana. The contract called for the appraisal to be done using all of the approaches named in R.S. 47:1853(B). When Pickett filed its reports in' December, 1977, the fair market values fixed therein were such that the' assessed valuation thereof would result in a substantial reduction in revenues from the ad valorem taxation of railroad properties.
Thereafter, a contract was entered into by the Tax Commission and Pan American Engineers, Inc., to reappraise the public service properties of plaintiffs. The contract specified that the sole basis' of the appraisal was to be the reproduction cost of the said properties less allowable depreciation. The reports filed by Pan American resulted in a substantial increase in the values of the said properties, although the tax revenues to be derived as a result thereof would still be lower than in prior years.
The Tax Commission based its initial determination of fair market value on the Pan American reports. Each of the petitioners herein formally protested the finding of the *43 Commission and requested a full hearing and the ultimate reduction of the assessed valuations. The hearing was held, and the Commission affirmed its initial determination. Thereafter, plaintiffs sought judicial review of the order of the Tax Commission.
The expert testimony in the record is unanimous, and unrefuted, to the effect that it is necessary to use a combination of the market value, cost and income approaches in making appraisals of railroad properties. The Pan American personnel who made the appraisal for that firm testified that they did not attempt to determine fair market value as defined by R.S. 47:2321, which provides:
“Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.”
The trial judge found that R.S. 47:1853(B), supra, requires that all three methods of appraisal must be used in determining the fair market value of the railroad operating properties. The Commission argues that the use of the disjunctive “and/or” in the statute permits it to determine which method of appraisal is “applicable” to the properties being appraised, and that “fair market value” may be arrived at using any applicable method as a criterion.
We disagree. We think the sense of R.S. 47:1853(B) is that all three methods should be used in making appraisals of public service properties, unless it is not possible to use one or more of the methods. It has been shown that all three of the methods are appropriate in appraising railroad operating properties, and that data exists on which such appraisals can be based. We think the trial judge correctly found that the Commission’s appraiser failed to find the fair market value of the properties appraised by him, and properly remanded the case for reappraisal in accordance with law.
Also at issue herein is the valuation of certain non-operating properties of Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans in Jefferson Parish. This property was valued at $11,659,900.00 for assessment purposes. At the hearing before the Tax Commission, Omer F. Kuebel testified as an expert witness for the railroad, and fixed the fair market value at $4,000,000.00. His testimony was uncontra-dicted at that hearing. The hearing officer, Thomas F. Wade, in his proposed order for the Commission, recommended that the Commission “review its assessment of these nonoperating properties and make the necessary adjustments to conform with the valuations presented by the testimony of Mr. Omer F. Kuebel.”
On October 25, 1978, the Commission advised plaintiffs by letter that “our decision is to accept the recommendations of Mr. Thomas F. Wade, the hearing officer, and finalize the 1978 assessed valuation for ad valorem tax purposes accordingly.” On February 16,1979, the Commission adjusted the assessed valuations of the said properties, but did not do so in accordance with Mr. Kuebel’s appraisal, although it was stated in the reasons for the change that they were doing so. The total of 790.75 acres was assessed at $709,920.00, which is 15% of $4,732,800.00, a figure in excess of the $4,000,000.00 appraisal of fair market value made by Mr. Kuebel.
The railroad argues that the Commission is bound by its own order, and must comply with the Kuebel appraisal. The Commission contends that, under R.S. 47:1990, it has the authority to change or correct any assessment at any time until the taxes are paid. The trial judge found that the Kuebel appraisal was properly made and unrebutted in the record and ordered the Commission to appraise the property accordingly.
We agree. Not only is Mr. Kuebel’s appraisal correct, but we do not believe that *44 the Commission has the authority to disregard its own order, rendered following a full hearing. In fact, in making the changes in the assessment of the properties, the Commission purported to implement its own order.
The judgment appealed from is therefore affirmed, at the cost of the Tax Commission.
AFFIRMED.