360 S.E.2d 560

**In re 1975 TAX ASSESSMENTS AGAINST ONEIDA COAL CO., et al.**

**No. 17315.**

Supreme Court of Appeals of West Virginia.

July 17, 1987.

Dissenting Opinion Sept. 18, 1987.

Jack Alsop, P.A., Webster Springs, for Webster Co. Comm.

Ernest V. Morton, Jr., Webster Springs, for Allegheny-Pitt.

Dan O. Callaghan Richwood, for Allegheny-Pitt Coal & East Ky. Energy.

W.T. Weber, Jr., Weston, for Shamrock Coal Co. and Oneida Coal.

PER CURIAM:

This is an appeal by the County Commission of Webster County from orders entered by the Circuit Court of Webster County reducing the assessed valuation of certain real estate for the purpose of *ad valorem* taxation. By agreement of the parties, several cases involving the same issue of tax assessments based on deed values for different appellees have been consolidated for purposes of this appeal.

The circuit court issued the rulings now before us in cases brought by several landowners challenging the valuation placed on their respective properties by the Assessor for Webster County (hereinafter assessor) and upheld by the County Commission of Webster County sitting as the Board of Equalization and Review [1] (hereinafter

---

1. *W.Va.Code,* 11–3–24 [1979] provides: "The     county commission shall annually, not later

board of review) for the tax years 1976 through 1986. The appellee taxpayers are the following coal corporations who own both fee and mineral estates in Webster County: Allegheny-Pittsburgh Coal Company (hereinafter Allegheny-Pittsburgh) for valuations during the years 1976 through 1983; Shamrock Coal Company, Inc. (hereinafter Shamrock) and Oneida Coal Company, Inc. (hereinafter Oneida) for valuations during 1981 through 1986; and East Kentucky Energy Corporation (hereinafter East Ky. Energy) for valuations during the years 1984 through 1986.

Allegheny-Pittsburgh owned 7,374 acres of property in fee, surface, minerals, or various combinations of these estates, which it purchased in September, 1974, for a total consideration of $24,624,500, as shown by the declaration of consideration of value in the various deeds. For the tax years 1976 through 1983 this property was assessed annually at $12,312,250, or 50% of the purchase price listed as consideration in the original deeds.[2]

On July 15, 1982, Allegheny-Pittsburgh sold its property in Webster County to appellee, East Ky. Energy, for $29,842,500, and the annual assessed valuation thereafter was $14,921,250, which represented 50% of the purchase price as contained in the 1982 deed.

Appellees Oneida and Shamrock are wholly owned subsidiaries of Elk River Resources, Inc. On May 12, 1981, Shamrock conveyed 7,783 acres of coal in Webster County to Oneida without consideration as a result of the companies' corporate affiliation. The assessment on this property for tax years 1981 through 1986 was derived from the purchase price paid when Shamrock acquired the property on December 21, 1977, from Preston W. Carroll and his wife, as well as other properties situate

in Braxton and Nicholas Counties. The assessor appraised the proportionate Webster County share of this conveyance at $5,867,600 and the assessed value at $2,933,800 or 50% of the appraisal value.

The appellees appealed the valuations by the board of review to the circuit court on the grounds that the assessments violated the equal and uniform clause of article X, section 1 of the West Virginia Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The appellees charged that the practice by the assessor and board of review of basing assessments on the consideration recited in deeds of conveyance intentionally discriminates against landowners who recently purchased property.

■ Article 10, section 1 of the West Virginia Constitution provides that "[s]ubject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." *W.Va.Code,* 11–3–1 holds that:

> All property shall be assessed annually as of the first day of July at its true and actual value; that is to say, at the price for which such property would sell if voluntarily offered for sale by the owner thereof, upon such terms as such property, the value of which is sought to be ascertained, is usually sold, and not the price which might be realized if such property were sold at a forced sale....

■ In syllabus point 3 of *Killen v. Logan County Commission,* 170 W.Va. 602, 295 S.E.2d 689 (1982), we held that "[t]he term 'value,' as used in article 10, section 1 of the West Virginia Constitution, means

---

than the first day of February, meet for the purpose of reviewing and equalizing the assessment made by the assessor."

**2.** "*W.Va.Code,* 18–9A–11 (1972) read *in pari materia* with *W.Va.Code,* 11–3–1 (1972) gives the assessor discretion to set the assessed value of property between fifty and one hundred percent of the appraised value." *In re Assessment of U.S. Steel,* 165 W.Va. 373, 377, 268 S.E.2d 128,

131 (1980). In 1981, *W.Va.Code,* 18–9A–11(f) was amended to provide that beginning July 1, 1981, the assessed valuation would be not less than 60 percent of the appraised valuation. *See also* note 3, *infra.* There is no allegation in the present case that the assessor applied different *rates* of assessment to the appellees' property as occurred in *U.S. Steel, supra.*

the 'worth of money' of a piece of property-its market value."[3]

The appellees presented expert evidence that the true and actual value of their property is lower than the purchase price stated in the deeds of conveyance. The appellees are more concerned, however, with the undervaluation of comparable Webster County properties. The appellees therefore argue that the primary issue presented by this case is whether the assessments of their property and comparable properties are equal and uniform under the United States and West Virginia Constitutions. The appellees contend that the board of review should have adopted the valuation of coal appraisals recommended in 1975 by the State Tax Commissioner of $360 per acre for coal and $300 per acre for surface, or even lower figures presented by their experts.

For the coal property owned by Shamrock and then Oneida, proof was offered by witnesses that in 1984 the appraised value was $119 per acre for an aggregate value of $926,177. Appellee Oneida now asserts by cross assignment of error that the true and actual value is $119 per acre and not $360 per acre as recommended by the State Tax Commissioner and adopted by the circuit court below.

Appellees, Allegheny-Pittsburgh and East Ky. Energy, challenged the assessor's valuations by presenting evidence of the assessed value of comparable properties. Based on this comparison, East Ky. Energy contended before the board of review and circuit court that the appraisal value for all of its Webster County property should be $1,049,872.43 or $142.37 per acre, instead of the $29,842,500 price paid to Allegheny-Pittsburgh in 1982. East Ky. Energy has not appealed the circuit court's final ruling regarding the value of its coal and surface property.

It was the policy of the assessor's office during the relevant time period to assess all recently transferred property on the basis of 50 percent of the declaration of consideration of value. There appears to be no dispute that this method was uniformly followed for all such property. With respect to property which had not been recently conveyed, the assessor testified that the assessed values were raised by ten per cent in the years 1976, 1982 and 1984. The appellees contend that the assessor failed to equally and uniformly apply the ten per cent increase to all relevant property.

The appellant county commission, which adopted the assessor's valuations of all appellees' property while sitting as the board of review, argued on appeal to the circuit court and in their petition now before this Court that the tax assessments reflect the "true and actual" value of appellees' property, and that the assessor's method of valuation was valid and was uniformly applied.

The trial court ruled that the assessor and board of review, while justified in making the initial assessments of appellees' property, based on the actual purchase price, subsequently violated the equal and uniform clause of article X, section 1 by failing either to raise the assessments of comparable property to appellee's level, or to lower appellee's assessments to the level of substantially similar coal property. The court chose to lower the appellee's assessment by ordering the substitution of the tax commissioner's appraisal value of $360 per acre for coal property and $300 per acre for surface property.

In *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984), the taxpayer, Westvaco Corporation, raised the same argument asserted by the appellees: use of recent deed values would violate the equal and uniform taxation clause of our State Constitution, *W.Va. Const.*, art. X, section 1. The petition in *Kline, supra,* was brought by citizens and taxpayers in Randolph County who had tried to have the appraisal of

---

**3.** Prior to *Killen,* assessors relied on *W.Va.Code,* 18–9A–11, to assess property at less than the true and actual value. After *Killen,* Section 1b of Article X to the West Virginia Constitution was adopted which set the assessed value of

property at 60 percent of its true value. Under this section, the percentage of assessed value can be altered by two-thirds of the members elected to each Legislative House.

property owned by Westvaco Corporation raised to reflect the actual purchase price. In that case the Assessor of Randolph County testified that he routinely used the 1965 State Tax Department appraisal, regardless of sale price, in order to maintain equality of taxation.

■ In *Kline* we reversed the trial court holding that property cannot be appraised at a value higher than the State Tax Commissioner's appraisal and established the following rule in syllabus point 2: "The price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value. Such evidence may not be rejected in favor of a Tax Commissioner's old appraisal."

■ The trial court in the case before us acknowledged that an assessment based on the purchase price paid by the appellees could be properly sustained under the rationale in syllabus point 2 of *Kline, supra.* Further, the appellees do not contend that the purchases of their respective properties were not "arm's length transactions." We, therefore, hold that the consideration paid by the appellees represents the "true and actual value" of their respective properties as set by the board of review.

We also held in syllabus point 1 of *Kline* that:

The equal and uniform clause of Section 1 of Article X of the West Virginia Constitution requires a taxpayer whose property is assessed at true and actual value to show more than the fact that other property is valued at less than true and actual value. To obtain relief, he must prove that the undervaluation was intentional and systematic.

The remaining question presented by this case is whether the undervaluation of other property in Webster County was "intentional and systematic" as argued by the appellees. The court below held that the failure of the assessor and board of review to either raise other taxpayers' assessments or lower the appellees' property valuation constituted discriminatory treatment of the appellees which justified a substantial reduction of the appellees' appraisal.

■ "It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear." Syl. pt. 7, *In re Tax Assessments Against Pocahontas Land Co.,* 172 W.Va. 53, 303 S.E.2d 691 (1983).

■ We find that the record does not support the trial court's ruling that the actions of the assessor and board of review constitute "intentional and systematic" discrimination. The assessments based upon the price paid for the property in arm's length transactions are an appropriate measure of the "true and actual value" of appellees' property.

The uniform use of recent deed values as the basis for appraising property subject to *ad valorem* taxation does not violate *W.Va. Const.,* art. X, § 1. Any dispute the appellees have with the assessments of other landowners in Webster County may be presented to the board of review. "[*A*]*ny* person who is aggrieved by *any* assessment shall have the right to appeal that assessment (if they have appeared and contested the valuation before the Board of Equalization and Review)." *Tug Valley Recovery Center, Inc. v. Mingo County Commission,* 164 W.Va. 94, 101, 261 S.E.2d 165, 170 (1979). (emphasis in original).

In *Tug Valley, supra,* we found support for this position in both *W.Va. Code,* 11–3–25, which holds, in part:

Any person claiming to be aggrieved by any assessment in any land or personal property book of any county who shall have appeared and contested the valuation or whose assessment has been raised by the county court [county commission] above the assessment fixed by the assessor, or who contested the classification or taxability of his property may, at any time up to thirty days after the adjournment of the county court [county commission], apply for relief to the circuit court of the county in which such books are made out. . . .

and *W.Va.Code*, 18–9A–11 which holds in part:

> In the event the county commission shall fail or refuse to make the reallocation of levies as provided for herein, the county board of education, the tax commissioner, the state board, or any other interested party, shall have the right to enforce the same by writ of mandamus in any court of competent jurisdiction.

We concluded that "[t]his language makes it clear that 'any interested party' is allowed to compel proper assessment of all real estate in his home county...." *Tug Valley, supra*, 164 W.Va. at 101, 261 S.E.2d at 170.

We addressed the very question raised by appellees in *Killen, supra,* and held at 170 W.Va. at 622, 295 S.E.2d at 709: "In the future, taxpayers who claim that they are being overassessed in relation to other taxpayers may not have their assessments reduced *as long as their property is valued at market value.* Instead, they should seek to have the assessments of other taxpayers raised to market value." (emphasis added).

Finally, we stated in reference to the facts in *Kline, supra,* at 174 W.Va. at 374, 326 S.E.2d at 720:

> The present case is somewhat analogous to those situations where an assessor makes a partial reappraisal of property which results in such property receiving a higher value than other property or there is disparate valuation between tax districts. Courts have rather uniformly rejected equal protection and uniformity of taxation arguments in such cases.

Based on the above principles, we find no merit in Oneida's cross assignment of error and reverse the judgment of the Circuit Court of Webster County and remand this case for reinstatement of the tax assessments on appellees' property previously set by the board of review.

Reversed and remanded.

BROTHERTON, Justice, dissenting:

It appears to me that the tail is now wagging the dog in West Virginia property taxation. Our statute requires a county assessor to assess property at its true and actual value, and I would go beyond Syllabus Point 2 and say that the price paid for property in an arm's length transaction is the *best* evidence of actual value. I would not, however, let the quest for true value override the *constitutional* requirement that taxation be equal and uniform. There is neither equality nor uniformity when recent purchasers of property must pay tax based on current value while all other property owners pay tax based on low, outdated assessed values. Where, as in this case, the assessor has made only token attempts to bring similar property up to current value, the assessor is intentionally and systematically undervaluing the other property in violation of Article X, § 1 of the West Virginia Constitution.

While I recognize the need for improving the educational system in West Virginia, this improvement cannot constitutionally be achieved at the expense of a few taxpayers. Appraisal of all property at its true and actual value must be achieved within the bounds of the "equal and uniform" provision of the constitution. The legislature has required full value assessment, W.Va. Code § 11–3–1 (1983), and the State Tax Commissioner is nearing completion of a statewide reappraisal program. This Court should not interfere in this process, which is legislative and administrative in nature. In my opinion, the holding in this case undermines any effort by the State Tax Commissioner to set uniform values, especially for mineral lands.

More fundamental than interference with the administrative process, however, is the majority's condonation of the discriminatory "reappraisal method" in this case. My legal objections to this system were more fully set out by Justice Neely in his dissent to the opinion in *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984). For these reasons, I respectfully dissent, and I am authorized to say that Justice NEELY joins me.