WATKINS, Judge.
Plaintiffs, MidLouisiana Rail Corporation and MidSouth Rail Corporation, both subsidiaries of MidSouth Corporation, appeal from a district court judgment affirming the 1988 tax assessments to plaintiffs’ corporations by the Louisiana Tax Commission. Plaintiffs contend on appeal that the Tax Commission’s ad valorem tax assessments for their companies unlawfully discriminated against them, as compared with other railroad companies, in violation of Louisiana’s “uniformity” clause found at Article 7, § 18 of the Louisiana Constitution, and in violation of the Equal Protection Clause of the United States Constitution. Furthermore, plaintiffs allege that the Commission assessments unlawfully discriminate against their companies as compared with other commercial property, in violation of the Railroad Revitalization and Regulatory Reform Act, codified at 49 U.S.C. § 11503 (“4-R Act”).
BACKGROUND
MidSouth Corporation was formed in 1986 when it purchased several hundred miles of track from Illinois Central Gulf Railroad (ICG) and incorporated MidSouth Rail as its subsidiary. This regional railroad operates across Louisiana, Mississippi, western Alabama and southern Tennessee.
In 1986, prior to the formation of Mid-South Rail, the subject railroad property was owned by the Illinois Central Gulf Railroad and was assessed by the Commission at $1,296,040.00, which resulted in the payment of just over $100,000.00 in actual taxes. MidSouth Corporation purchased the assets which now comprise its subsidiary MidSouth Rail from the Illinois Central Gulf Railroad on or about March 31, 1986, for the sum of $130,577,700.00. MidSouth Corporation allocated the purchase price on its books at $126,047,660.00 for property, plant, and equipment; $383,000.00 for inventory; and $4,147,040.00 for intangibles. In 1987, the Commission initially increased the ad valorem tax assessment on the Mid-South Rail property by more than 360%, which set MidSouth Rail’s corresponding tax liability at approximately $500,000.00 annually. Pursuant to an administrative protest, the Commission agreed to reduce MidSouth Rail’s 1987 assessment by 50% to $2,973,810.00. The Commission concluded that although “the Public service valuation of $125,000,000 was technically correct, the Commission recognizes the somewhat unusual situation of a new company being formed from part of an existing one and agrees to reduce the tax by 50% in order to ‘ease the company into its unexpected tax situation.’ ”
On or about August 18, 1988, MidSouth Rail was notified that its system value for ad valorem tax purposes had been tentatively set at $117,000,000.00 and that .40705 of the system value of the railroad would be allocated to Louisiana. The resulting Louisiana assessed valuation was, therefore, $6,371,520.00. MidSouth again filed an administrative protest, requesting that the assessed value be reduced to $2,997,000.00.
A similar course of events occurred with regard to the 1988 ad valorem tax assessment of MidLouisiana Rail. MidSouth Corporation purchased the assets which now comprise its subsidiary MidLouisiana Rail from Stone Corporation on or about September 8, 1987, for $11,500,000.00. In 1987, while still owned by Stone Corporation, the property which now comprises MidLouisiana Rail was assessed at $372,-390.00. In August 1988, MidLouisiana was notified that its total system value for ad valorem tax purposes had been tentatively set at $6,140,000.00 with a resulting assessed value of $866,440.00. Consequently, MidLouisiana Rail filed a written protest of the 1988 assessment with the Tax Commission.
A consolidated hearing was held on November 29, 1988, and continued on March *1166 13, 1989. By order dated June 7, 1989, the Tax Commission reduced MidSouth’s assessment to $4,622,510.00 to correct calculation errors, and refused any reduction of MidLouisiana Rail’s assessment.[1] Both companies appealed the Tax Commission’s decision to the district court which affirmed the decision.
MidSouth Rail contends that the 1988 assessment of its company reflects an increase of 257% over the Commission’s assessment of the same property in 1986 while owned by ICG and 55% over the property’s final assessment in 1987. Mid-Louisiana contends that the 1988 assessment of its property reflects an increase of 133% over the Commission’s assessment of the property in 1987 while owned by Stone Corporation. The plaintiffs do not suggest that an increase in their respective assessments, standing alone, is unconstitutional; however, their contention is that the increases in their assessments occurred during a period when the Commission either reduced or held constant the assessments of property owned by other Louisiana railroads.
The Tax Commission contends that in determining the fair market value of these railroad properties, it utilized the appraisal procedures authorized by law and applied them uniformly to all such properties in the state. As a result, the Commission concludes, the appraisals have produced a reasonably accurate fair market valuation of the subject properties.
STANDARD OF REVIEW
Appeals from decisions of the Tax Commission are governed by LSA R.S. 49:964
G. of the Administrative Procedure Act[2] which provides that:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record....
“The manifest error test of La.R.S. 49:964(G)(6) is used in reviewing the facts as found by the agency, as opposed to the arbitrariness test used in reviewing conclusions and exercises of agency discretion.” Johnson v. Odom, 536 So.2d 541, 546 (La. App. 1st Cir.1988), writ denied, 537 So.2d 213 (La.1989).
APPLICABLE LAW
The plaintiffs contend that the disparate assessment and consequent taxation of their companies in comparison with other railroad companies within Louisiana is an unlawful violation of the “uniformity clause” of La. Const, art. 7, § 18, which provides in pertinent part:
(A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valua *1167 tion, which, ... shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.
(B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:
Classifications Percentages
1. Land 10%
2. Improvements for resi- 10% dential purposes
3. Electric Cooperative proper- 15% ties, excluding land
4. Public Service properties, ex- 25%[3] eluding land
5. Other property 15%
(D) Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor ... Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.
In accordance with the constitutional mandate of Article 7, the legislature enacted LSA R.S. 47:2321 and 47:1853 A. and B., which provide in pertinent part:
§ 2321. Fair Market Value; defined Fair market value is the price of property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.
§ 1853. Appraisal of public service properties
A. In accordance with the provisions of this Section and Sections 1854 and 1855, the Louisiana Tax Commission shall, on or before September first of each calendar year, appraise, for taxation, public service properties based upon each company’s report, as defined in Section 1852(A) and such other information as may be available to the Louisiana Tax Commission. In the absence of a report the Louisiana Tax Commission shall appraise the properties of any company failing to file such a report upon any information which the Louisiana Tax Commission, in its best judgment, deems sufficient.
B. In appraising public service properties, the Louisiana Tax Commission shall employ all of the following nationally recognized techniques of appraisal, where applicable, to best determine fair market value: the market approach, the cost approach, and/or the income approach. However, all public service properties of the same nature and kind shall be appraised in the same manner. The appraised value of all lands owned by the company in this state shall be deducted from the total appraised value of the public service properties and shall be assessed by the Louisiana Tax Commission and shown as a separate item on the tax roll.
According to LSA-R.S. 47:1853, the determination of the fair market value of public service properties is based upon each company’s annual report and such other information as may be available to the Tax Commission. In appraising public service properties, the Tax Commission shall employ the market approach, the cost approach, and/or the income approach, where applicable, to best determine fair market value. Public service properties of the same nature and kind shall be appraised in the same manner.
*1168 In its appraisal of public service properties the Tax Commission employs the unitary valuation method, whereby the fair market value of the entire system is first determined, then an allocation is made to each state of that portion of the system that is located within the taxing jurisdiction of that state. The allocated portion is thereafter given an assessed value which is a percentage of the property’s fair market value. “The percentage of fair market value shall be uniform throughout the state upon the same class of property.” La. Const, art. 7 § 18(A).
Denial of uniformity in the form of under-assessment of other taxpayers is indeed a denial of equal protection and due process. In Re Protest of Dow Chemical Co., 458 So.2d 955 (La.App. 1st Cir.1984). To establish an unconstitutional denial of uniformity in the form of under-assessment of other taxpayers, a taxpayer must allege and prove a pattern of under-assessment. Furthermore, the denial of uniformity must have been intentional, although intent may be inferred from a systematic lack of uniformity. Id.
The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution protects the rights of equality and uniformity of taxation, and its cloak is substantially similar to the protection of rights afforded by the uniformity provisions of the Louisiana State Constitution. Allegheny Pittsburgh Coal Co. v. County Com’n of Webster County, W.V., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).
DISCUSSION
The undisputed evidence shows that Mid-South’s and MidLouisiana’s properties are valued and assessed at an amount substantially higher than other railroad properties. The record contains the following evidence, generally undisputed, introduced by these taxpayers in support of their contention that their tax assessments are in violation of the uniformity provisions of the Louisiana Constitution and the Equal Protection Clause of the United States Constitution,
(a)For every dollar of gross revenue generated in Louisiana, MidLouisiana Rail is assessed 44 cents and MidSouth is assessed 33 cents. All other major railroads in Louisiana are assessed at between 7 cents and 13 cents per dollar of gross revenue.
(b) For every dollar of net operating revenue generated in Louisiana, Mid-South Rail is assessed $3.27, and Mid-Louisiana Rail is assessed-$1.04. With the exception of Norfolk Southern, which is assessed at $1.11, all other major railroads in Louisiana are assessed between 24 cents and 87 cents per dollar of net operating revenue.
(c) For every dollar of book value of plant, property, and equipment invested in Louisiana, MidSouth Rail is assessed 9 cents, and MidLouisiana is assessed 30 cents. With the exception of Kansas City Southern, the other 12 major railroads in Louisiana are assessed between 2 cents and 5 cents.
(d) MidSouth is assessed $19,756.00 per mile of track located in Louisiana, and MidLouisiana is assessed $12,371.00 per mile of track, while all other railroads in Louisiana are assessed between $1,140.00 and $13,815.00 per mile, with a mean average of approximately $10,-321.00.
The taxpayers point out that the differences in assessments could perhaps be justified if MidSouth had assets of higher value than the other railroads; however, the uncontroverted evidence presented at the administrative hearing by railroad expert Alan D. Moss demonstrated that Mid-South’s assets measured far below most other Louisiana railroads with respect to the value of its track, equipment, ballast, bridges, locomotives, yards, and terminals.
The taxpayers argue that the assessment disparity results to a large extent from the Commission’s discriminatory application of the income and cost approaches. Specifically, they set forth the Commission’s errors as follows:
(1) The Commission erroneously considered the current sales price of Mid-South Rail and MidLouisiana while valuing the other railroads using historical, *1169 outdated, original costs, some dating back 100 years.
(2) The Commission erred when it considered five year “historical” earnings of other Louisiana railroads while considering only the current earnings of Mid-South Rail and MidLouisiana.
(3) The calculation of fair market value, weighing cost value 10% and income value 90%, results in fair market values which do not reflect true market value.
We will first address plaintiffs’ argument that they have been denied equal protection of the law because the fair market value of their property is determined by using the recent purchase price of their respective properties while the remaining railroads are valued based upon outdated original cost figures reflected in book values.
The United States Supreme Court has determined that this type of “welcome stranger assessment” is violative of the Equal Protection Clause of the Fourteenth Amendment of the Constitution when there is a failure by the taxing authority to equalize the differences within a short period of time. Allegheny, supra. The Court noted that:
“[j]ust as that Clause tolerates occasional errors of state law or mistakes in judgment when valuing property for tax purposes, it does not require immediate general adjustment on the basis of the latest market developments. In each case, the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.”
109 S.Ct. at 638.
The Tax Commission acknowledged the use of “welcome stranger assessment” by the public service staff of the Commission and ordered the staff to take cognizance of the sales of the property which became MidSouth Rail and MidLouisiana Rail in assessment of comparable property in the future. The commission concluded that the implementation of its order would seasonably attain a rough equality of treatment among the similarly situated taxpayers.
The holding of Allegheny permits the taxing authority a reasonable time to make adjustments for recent changes in market value. The question in the instant case is whether the Tax Commission has had a reasonable amount of time to make adjustments. The record discloses that the Commission has no system of general adjustment nor does it make any adjustments in value for comparable property when information concerning a recent railroad purchase becomes available. The sales of property which became MidSouth Rail and MidLouisiana Rail occurred on March 31, 1986, and September 8, 1987, respectively. The 1987 and 1988 tax assessments do not reflect any adjustments in comparable property. We understand that the task of reappraising all the railroads in Louisiana to reflect the recent purchases made by MidSouth Rail and MidLouisiana Rail is not a simple undertaking; however, it is one which must be made if the Tax Commission wishes to continue assessing MidSouth Rail and MidLouisiana Rail based upon their current market value. We cannot disagree with the Tax Commission’s finding that its failure to attain a rough equality among the railroads within one year is not viola-tive of the Equal Protection Clause. However, we do believe that the 1989 assessments should begin to reflect substantial progress toward the achievement of equality of treatment.
We now consider whether the Commission erred when it considered five year “historical” earnings of other Louisiana railroads while considering only the current earnings of MidSouth Rail and MidLouisia-na Rail. We are unable to determine from the record before us whether it was possible for the Commission to construct a five year historical income stream for the plaintiffs. The record is also bereft of any testimony concerning the generally accepted appraisal techniques for situations of this kind. Since it is apparent that the fair market value of the railroad properties is almost totally determined from the income produced by the property, it follows that the income figures used should be determined as uniformly as possible.
*1170 We finally address the formula used to calculate fair market value based on the cost and income approaches to value. The 1988 fair market value of all Class I Railroads in Louisiana was calculated using a combined cost and income approach. The fair market value of each railroad based on the cost approach was determined by using the book value of the railroad less 40% depreciation. The fair market value of each railroad, based on its income was determined by taking an average of the last five years of net operating income and capitalizing that income to arrive at the estimated value needed to generate that income.[4] The Tax Commission appraiser arrived at the fair market value of the railroad by adding 10% of the cost approach value and 90% of the income approach value.[5] The following is a chart showing the cost and income values established for several Class I railroads in 1988.
COST APPROACH INCOME APPROACH UNIT VALUE 10% COST 90% INCOME
MidSouth Rail 79,000,000 129,000,000 117,000,000
MidLouisiana 6,500,000 6,100,000 6,140,000
ICG 875,000,000 262,000,000 291,000,000
KC 320,000,000 264,000,000 275,000,000
ST LOUIS SOUTHERN 482,000,000 277,669,230 271,000,000
CSX 5,337,090,100 2,347,539,300 2,800,000,000
SOUTHERN PACIFIC 2,000,000,000 197,200,000 490,000,000
SOUTHERN RAILWAY 5,500,000,000 2,860,000,000 3,288,000,000
UNION PACIFIC 3,980,000,000 3,100,000,000 3,188,000,000
The above chart graphically points out the differences between the cost and income approaches for the various railroads. MidSouth Rail is the only railroad whose value based on income is higher than its value based on cost. Consequently, an appraisal method which weighs the income approach 90% and the cost 10% places a heavier tax burden on MidSouth Rail or any railroad that produces a high income.
The fact that a railroad will pay more tax because it earns more does not violate equal protection under the law. However, the Tax Commission’s method of valuing railroad property fails to consider the fact that MidSouth Rail’s equipment and rails are inferior to that of the other Class I railroads. By weighing income 90% and cost 10%, the Commission is undervaluing the other Class I railroads whose equipment is superior to plaintiffs. The present formula assigns a disproportionately high weight to a company income-producing capabilities at 90% and virtually ignores its assets. This reasoning is further supported by the testimony of Mr. John E. Green, an expert in public service property appraisals. During the hearing of this matter, Mr. Green noted in regard to Mid Louisiana’s appraisal that a $3,000,000.00 variance between the cost approach and the income approach is unacceptable for appraisal purposes. We can only conclude that the extremely disproportionate weighing of the already unacceptable differences *1171 in value amplifies the disparity in determining fair market value.
CONCLUSION
The uniformity provision of the Louisiana Constitution requires the assessing authority, the Louisiana Tax Commission in this case, to appraise and assess similar property located in the state in a uniform manner. In order to comply with the uniformity provision, the Tax Commission must determine the fair market value of all property subject to taxation “in accordance with the criteria established by law which shall apply uniformly throughout the state.” La. Const. art. 7, § 18 D. LSA-R.S. 47:2321 defines fair market value, and LSA-R.S. 47:1853 sets forth the methods of appraisal for determining the market value of public service properties. The latter statute provides that''the Tax Commission shall employ the market approach, the cost approach, and/or the income approach to best determine fair market value. Although it is understood that each approach or method of appraisal produces a fair market valuation, we have previously held that LSA-R.S. 47:1853(B) requires that all three methods of appraisal must be used in determining the fair market value of public service properties, unless it is not possible to use one or more of the methods. Louisville & Nashville R.R. v. Louisiana Tax Com’n, 383 So.2d 41 (La.App. 1st Cir.1980).
In its Reasons for Decision and Findings of Fact, the Tax Commission explained that “... because railroads rarely change hands, other railroads in Louisiana are not assessed using the market approach to value. In the interest of uniformity the staff derived the assessment by combining the two other approaches, as is done in assessment of other railroads.” Whether the small number of sales of railroad properties is sufficient justification for the Commission’s failure to use the market approach as the law requires is doubtful in view of the Commission’s instructions to its staff in this same Order “to take cognizance of the sales of the property which became MidSouth and the more recent sale which became MidLouisiana, in assessment of comparable properties for its 1989 assessments if they have not already done so.” For the tax year in question, 1988, the Commission argues that it was not feasible to use the market approach of appraisal, yet it orders its staff to use that approach for the following year. There is no evidence in the record to indicate why it would be feasible to use the market approach in 1989, when it was not feasible in 1988.
Conceding, however, for the sake of our discussion that the Commission was justified in not using the market approach, we are convinced that the Commission erred in the manner in which it applied the two remaining methods of appraisal required by LSA-R.S. 47:1853(B), namely, the cost approach and the income approach.
Therefore we conclude that when using two, as in this case, or all three of the statutorily mandated methods, the valuation arrived at by each method must be given equal weight and averaged to produce the fair market value of the properties for the purposes of taxation. To permit the Tax Commission to arbitrarily assign unequal weights to the methods used, in the absence of persuasive evidence, would have the effect of permitting the Tax Commission to evade the clear mandate of the statute. The record contains no evidence which would justify the assignment of unequal weight to the valuations produced by each method of appraisal.
Because we find that the tax assessments are in violation of the Uniformity Clause of the Louisiana Constitution, we need not address the issue of whether a violation of the 4-R Act occurred.
DECREE
For the foregoing reasons we find that the Tax Commission did not comply with the provisions of LSA-R.S. 47:1853 B in determining the fair market value of the railroad properties which are the subject of this appeal, and the assessments resulting therefrom are in violation of Article 7, § 18 D of the Louisiana Constitution. In view of our finding we need not address the issue of an alleged violation of the “4-R Act.”
*1172 Accordingly, the judgment of the district court affirming the decision of the Louisiana Tax Commission, which held the 1988 ad valorem tax assessments of MidSouth Rail Corporation and MidLouisiana Rail Corporation valid and correct, is hereby reversed. These proceedings are remanded to the Tax Commission for a re-determination of the fair market value and assessment of these properties in accordance with law and with the views expressed herein.
Costs are assessed against the Louisiana Tax Commission.
REVERSED AND REMANDED.
CARTER, J., concurs with reasons.

. The reduction in MidSouth Rail’s tax assessment was allowed to correct an error in calculating the proper allocation factor to determine Louisiana’s portion of the “system value" and to correct an undisputed error in computing Mid-South Rail’s net operating income.

. We note that the 1982 amendment of LSA R.S. 49:967(A) has apparently legislatively overruled the holding of the Louisiana Supreme Court in Dow Chemical Company v. Pitre, 421 So.2d 847 (La.1982), that the Louisiana Tax Commission is not subject to the Administrative Procedure Act. LSA R.S. 49:967 provides that the Louisiana Tax Commission is governed by the act unless otherwise specifically provided by law. The only other provision governing the review of a Tax Commission decision is LSA-R.S. 47:1998 which only authorizes judicial review without any specific procedures or standards for such judicial review. “In the absence of a specific provision regarding the standard of review, it does not appear that La.R.S. 47:1998 would be sufficient to exclude application of the Act pursuant to La.R.S. 49:967(A).” Holiday Bossier Ltd., v. Tax Com’n, 574 So.2d 1280, 1285 n. 2 (La.App.2d Cir.), writ denied, 578 So.2d 136 (La.1991).

. Although railroads are considered public service properties, they are assessed at 15% instead of 25% because the 4-R Act mandates that railroad property not be taxed differently from other commercial property,

. Because MidSouth Rail and MidLouisiana Rail were in business only one year prior to the 1988 tax assessments the Commission used only one year's income in calculating their respective fair market values based on income.

. According to the documents admitted into evidence the value assessments made in 1986 were based on a different formula which included 70% weight to the income approach, 10% to the market approach, and 20% to the cost approach.