SUTIN, Judge (specially concurring). {24} I concur in the Majority Opinion. I hesitate signing on with no separate statement only because I have concern about what I consider some imprecise, inaccurate, or ambiguous wording that might cause problems down the line, particularly with regard to the propriety of valuation procedure employed under Section 7-36-21.2. I also hope it is clear that the Majority Opinion is to be narrowly read as limited to Homeowners’ claim that the valuation under Section 7-36-21.2 violated Article VIII, Section 1(B) in that a new class of taxpayer not specified in Section 1(B) was created. {25} Thus, following the letter of the certified question, I concur in affirming the district court on the very limited ground that Subsections (A)(3)(a), (B), and (E) of Section 7-36-21.2 do not, as Homeowners contend, unconstitutionally go beyond owner-occupancy, age, and income by “creat[ing] a classification based on when residential property was acquired}.]” I am not persuaded by Homeowners’ “fourth taxpayer classification” theory. {26} Although not at issue in the appeal before us, I think it useful to write separately to raise questions in regard to the valuation procedure employed under Section 7-36-21.2. The Majority Opinion analyzes the issue as follows. The seller has the benefit of the 3% increase limitation until such time as he sells, at which time he no longer needs or deserves the benefit of that limitation. The buyer gains the benefit of the 3% increase limitation until such time as he sells, at which time he, too, no longer needs or deserves the benefit of that limitation. A new valuation (from which the 3% increase limitation starts) based on the sale price of the property is properly imposed on the property purchased. The valuation based on the sale price reflects the current and correct value and thus the “market value” of the purchased property. Exclusion of purchased property from a 3% annual increase based onthe lastvaluation of the property, and starting the 3% annual increase based on a new purchase price valuation, does not create an unconstitutional fourth taxpayer status classification, that is, a taxpayer classification in addition to the three allowed in Article VIII, Section 1(B), namely, “owner-occupancy, age},] or income.” The Majority Opinion properly does not delve into whether this valuation and ultimately the taxation process violates or is a permissible exception to the equal and uniform clause in Article VIII, Section 1(A) of the New Mexico Constitution. {27} Concern about the equality and uniformity of this purchase-price-valuation scheme is raised based on the following hypothetical example. Homeowners A and B live next door and live in virtually identical residences situated on the same amount of acreage. Their valuations in 2007 are $100,000. Homeowner A sells his home to Buyer C in 2007, a bubble housing economy, for $300,000. Buyer C’s 3% limitation increase starts at $300,000. Homeowner B continues to have a 3% limitation increase based on $100,000. Homeowner B sells his property to BuyerD in2012 for $125,000, the market having sunk dramatically. Buyer D, sitting next door to Buyer C, has the protective 3% limitation benefit on a $125,000 value; whereas Buyer C has that benefit on a $300,000 value. One can suppose that, in 2012, Buyer C can attempt to get a reduction of the 2012 assessed value, but one should not count on it. Buyer C would have to protest the valuation and prove a lower value by comparable sales. Comparable sales are likely to be a mixture of low and high prices, depending on market fluctuations over the period considered for comparable sales. The foregoing example can be extended to residential homes in a neighborhood or larger area consisting of like homes. {28} Article VIII, Section 1(B) gives no inkling of an intent that whatever annual increase limitation the Legislature might enact could carry the change-of-ownership exclusion enacted in Section 7-36-21.2(A). An issue may well remain open as to whether Article VIII, Section 1(A) can be construed as intending its equal and uniform mandate to permit the purchase-price-valuation process. {29} Section 1(A) deals with (1) value of classes of property and (2) methods of valuation of that property, with a percentage tax rate limitation. “[S]o long as the tax is equal and uniform on all subjects of a class and the classifications for taxation are reasonable, such legislation does not offend these provisions of the State or Federal [Constitutions.” Gruschus v. Bureau of Revenue, 74 N.M. 775, 777, 399 P.2d 105, 106-07 (1965); see NMSA 1978, § 7-36-2.1(A) (1995) (stating that property is classified as residential and non-residential). What are we to understand from Article VIII, Section l(A)’s “Except as provided in Subsection [(B)] of this section” preface? Are we to understand that Subsection 1(A) says that Subsection (B) controls even if taxes are not equal and uniform upon residential property? Do we construe Subsection (B) to permit use of valuation methods resulting in taxes upon residential property that are not equal and uniform? Did the Legislature intend such broad constitutional authority in order to enhance its own plenary authority in taxation? Were the people who approved the amendment sufficiently advised ofthe breadth of such authority, and did they understand what it could bring about? {30} Article VIII, Section 1(B) requires the Legislature to provide by law for the valuation of residential property for property taxation purposes “in a manner that limits annual increases in valuation of residential property.” Subsection (B) then states that the annual increase limitation “may be applied to classes of residential property taxpayers based on owner-occupancy, age[,] or income.” Article VIII, Section 1(A)’s equal and uniform clause relates to subjects of taxation of the same class. Property is the subject of taxation. Residential property is a subject of taxation of the same class. Article VIII, Section l(B)’s mandate to limit increases relates to valuation of residential property. {31} Section 7-36-21.2 is the Legislature’s apparent attempt to come within the constitutional mandates of Article VIII, Sections 1(A) and 1(B). In that apparent attempt to come within the constitutional mandates, the Legislature created not only the 3% “manner” of annual valuation increase in Section 7-36-21.2(A), but at the same time created in Section 7-36-21.2(B) what appears to call for a re-valuation of the property purchased at the point of ownership change. That is how the valuation authorities have construed Section 7-36-21.2(B). Under Section 7-3 6-21.2(B), the valuation of the new purchaser’s property must be the “current and correct value as determined pursuant to the general valuation provisions of the Property Tax Code.” {32} Section 7-36-15(B) of the Property Tax Code sets out the methods of valuation for property taxation purposes for residential and other property not covered under other specific statutory provisions. Market value is to be “determined by application of the sales of comparable property, income or cost methods of valuation},] or any combination of these methods.” Id. And the valuation authority must “apply generally accepted appraisal techniques}.]” Section 7-36-15(B)(1). Yet, when a residential property is sold, the valuation authorities are employing a valuation method that determines value based solely on the purchase price of the property.[2] {33} This purchase-price method of valuation is not a valuation method based on comparable sales, although comparable sales appears to be the primary if not only method of valuation contained in the Property Tax Code for valuation of purely residential property. See § 7-36-15(B). Furthermore, it is not readily apparent that using the purchase price of the property being valued as the sole valuation determinant is a generally accepted appraisal technique. In addition, according to Property Tax Department Regulation 3.6.5.22(G)(6)NMAC,“[e]vidence of the sale price of the property being valued is not sufficient to establish a market value under Section 7-36-15 ... if the evidence of the sales of comparable property indicates the sales price was not the market value.” Also, D ep artment Regulation 3.6.5.23(C)(1) and (2) NMAC define “current and correct values of property” in terms of market value, and “market value” is determined based on the market value method of valuation set out in 3.6.5.22(G)(1) NMAC as “a process of analyzing sales of similar recently sold properties in order to derive an indication of the most probable sales price of the property being appraised.” Nothing in Article VIII, Section 1 indicates an intent that what should be an equal and uniform annual increase limitation gives rise to use of purchase price as the exclusive method of re-valuing a particular residential property that happens to be sold, where all similar properties remain undervalued. {34} In the attempt to construe Article VIII, Sections 1(A) and 1(B) and Section 7-36-21.2 in tandem and harmony, one must at least question whether the Constitution permits the Legislature to enact legislation that results in apparent non-uniform and unequal valuation and taxation of properties of the same class. Were Plaintiffs to have raised whether the manner in which valuation authorities have applied Section 7-36-21.2 violates the equal and uniform clause or constitutional equal protection, it is not all that clear that Nordlinger, 505 U.S. 1, would control rather than Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., 488 U.S. 336 (1989). {35} It would at least seem arguable that Section 7-36-21.2 violates Article VIII, Section 1. The argument would be that, as the statute reads, as well as in the manner in which it has been interpreted and applied by the valuation authorities, Section 7-36-21.2 goes beyond simply providing for valuation in a manner that uniformly limits annual increases in valuation of residential property during valuation cycles. This view may very well have been how the electorate saw the benefit of constitutional amendment when they voted in favor of its adoption. It would seem arguable that Section 7-36-21.2 has created an impermissible offspring through application of a method of valuation that results in what amounts to unequal and non-uniform checkerboard and patchwork valuation and taxation of the same class of property. The argument would be based on singling out one property for a currently higher valuation while leaving all unsold similar, comparable properties in perhaps lesser or under market value status. We have no evidence here of public benefit from long-term home ownership or even of a weighing of any such benefit against any detrimental effect resulting from discouragement and disincentive with regard to alienation of property when purchase of a new property is contemplated. How persuasive these arguments might be must be left for any future proceedings that may arise. Plaintiffs did not raise and argue any of this. {36} As I indicated earlier, what I have discussed here does not specifically reside within the letter of the limited question certified to this Court. But nothing I have discussed should, if legitimately arguable, be considered precluded by anything written in the Majority Opinion from contention and argument in any other pending or future case. JONATHAN B. SUTIN, Judge The valuation authorities refer to this methodology for determining property value as an “acquisition value system.” See Dzur v. Bernalillo Cnty. Protests Bd., No. CV-2008-12410, ¶ 23 (2d Jud. Dist. Ct.).