Andres **GUILLEMARD GINORIO,**
et al., **Plaintiffs,**

v.

Fermin **CONTRERAS,**
et al., **Defendants.**

Civil No. 03–2317 (JAG).

United States District Court,
D. Puerto Rico.

Jan. 10, 2006.

See also, 301 F.Supp.2d 122 and 322 F.Supp.2d 153, affirmed, 2005 WL 3382638.

Joan Schlump–Peters, Nachman & Guillemard, San Juan, PR, Jeffrey J. Pyle (PHV), Joseph D. Steinfield (PHV), Prince Lobel Glovsky & Tye LLP, Boston, MA, for Plaintiffs.

Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Landron & Vera LLP, Guaynabo, PR, Ivette M. Berrios, Luis A. Rodriguez Muñoz, Landron & Vera LLP, Guaynabo, PR, for Defendants.

## AMENDED OPINION AND ORDER[1]

GARCIA–GREGORY, District Judge.

On December 10, 2003 plaintiffs Lone Star Insurance Producers, Inc. ("Lone Star") and its shareholders Andres Guillemard Ginorio ("Guillemard") and his wife Maria Noble Fernandez (collectively the "plaintiffs") filed this action against the Office of the Insurance Commissioner ("OIC") and Fermin Contreras ("Contrer-as"), in his individual and official capacity as the former Insurance Commissioner of Puerto Rico, alleging civil rights violations pursuant to 42 U.S.C. § 1983 (Docket No. 1). On June 6, 2004, the plaintiffs amended the complaint to include Dorelisse Juarbe ("Juarbe") in her individual and official capacity as the current Insurance Commissioner (Docket No. 58). On May 20, 2005 plaintiffs moved for the entry of partial summary judgment on their due process claims (Docket Nos. 204–207). On June 7, 2005 the defendants opposed the motion and cross-moved for summary judgment, seeking dismissal of the complaint (Docket Nos. 216, 218, 220, 221). On July 7, 2005, plaintiffs opposed (Docket Nos. 231–238). On August 31, 2005, the Court referred the motions to Magistrate–Judge Camille Velez–Rive for a Report and Recommendation (Docket No. 261). On November 17, 2005, the Magistrate–Judge recommended that the Court deny plaintiffs' motion for summary judgment and grant in part and deny in part the defendants' (Docket No. 287). On December 2, 2005, the parties filed objections to the Report and Recommendation (Docket Nos. 294, 296). For the reasons discussed below, the Court **ADOPTS in part** and **REJECTS in part** the Magistrate–Judge's Report and Recommendation. Accordingly, the Court **GRANTS** plaintiffs' motion for summary judgment and **DENIES** the defendants' motion.

## FACTUAL BACKGROUND[2]

Plaintiff Guillemard is the President and fifty percent (50%) stockholder of Lone Star. Contreras was the Insurance Commissioner of Puerto Rico until his resignation became effective on December 31,

---

1. This Amended Opinion and Order supersedes the Opinion and Order issued on January 3, 2006 (Docket No. 303).

2. The facts are taken from the Report and Recommendation (Docket No. 287).

2003. On January 7, 2004, Juarbe was appointed as the Puerto Rico Insurance Commissioner.

On November 20, 2001, Contreras ordered an audit as to Lone Star's operations and transactions from January 1, 1997 through September 30, 2001. On November 26, 2001, David Castro Anaya ("Castro–Anaya") initiated the audit. Plaintiffs submit that Castro–Anaya's sole purpose was to determine whether improper payments had been made to third parties (Exhibit 5, Castro–Anaya's Deposition at p. 71). Plaintiffs made available to Castro–Anaya two (2) Certified Public Accountants to fully cooperate with the audit and provide all relevant documents (Exhibit 1, Guillemard's Deposition at pp. 74, 52–54).

By December 17, 2001, the audit had concluded and one hundred percent (100%) of the documents pertaining to governmental agency insurance had been examined. (Castro–Anaya's Deposition at p. 98; Guillemard's Deposition at pp. 98–101). Castro–Anaya informed Guillemard and Miguel Carbonell, Lone Star's CPA, that he found no irregularities or improprieties and that he would prepare a draft of his final report within the next few months and send them a copy (Castro–Anaya's Deposition at pp. 99–100).

Neither during the year 2002 nor during the first half of the year 2003, did the plaintiffs receive a report from Castro–Anaya. On July 10, 2003, Castro–Anaya submitted a report to his supervisor entitled "Final Investigation Findings Report", but he did not send a copy to Guillemard. The report found no improper payments to third parties (Exhibit 7). The report, however, raised other issues

not given as reasons for the initial investigation; in particular, that Lone Star had entered into a commission-sharing arrangement with an insurance broker, Urrutia Valles, Inc ("UVI"). The report concluded that the sharing of commissions is a violation to Section 939(2) of the Puerto Rico Insurance Code. Plaintiffs, not being informed of this report, had no opportunity to object or present evidence on their behalf.

On December 10, 2003, plaintiffs filed this federal lawsuit against Contreras for violations to their First and Fourteenth Amendment rights, alleging that defendants engaged in political discrimination by singling them out in an investigation not carried out in good faith and seeking to punish plaintiffs' business because of Guillemard's political activities. By that time, no order or draft on the audit report had been prepared. Contreras learned of plaintiffs' lawsuit by December 11, 2003 (Exhibit 2, Contreras's Deposition at pp. 112–113). On December 23, 2003, Contreras issued an order revoking plaintiffs' insurance license for a period of five (5) years; denying any license in any capacity for a period of five (5) years; and imposing a fine of $2,035,000. The order included wording to the effect that plaintiffs had been "incompetent" and "untrustworthy" (Exhibit 11). The order further notified to plaintiffs of their right to request a hearing to review its findings, but stated that the revocation of their insurance agent's license would remain in effect, while the administrative proceedings were ongoing (Id.¶ 8–9).

An administrative hearing was held on March 4, 2005.[3] Soon thereafter, Insurance Commissioner Juarbe issued a resolu-

---

**3.** This hearing mooted a Temporary Restraining Order and Preliminary Injunction issued by the Court ordering the Insurance Commissioner not to revoke plaintiffs' license without first affording them procedural due process. *See Guillemard–Ginorio v. Contreras Gomez,* 2005 WL 3382638 (1st Cir. December 13, 2005) (unpublished opinion).

tion which still found violations to the Insurance Code and which imposed sanctions on Lone Star, but drastically reduced those sanctions that had been imposed by Contreras. The fine of over $2,035,000 was reduced to $208,000; the five (5) year license suspension was reduced to three (3) months; the prohibition of filing for a license within five (5) years was eliminated, and the references within Contreras' order as to plaintiffs' "untrustworthiness" and "incompetence" were left without effect (Exhibit 12, Resolution ¶ 24–25).

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### B. *Standard for Reviewing a Magistrate-Judge's Report and Recommendation*

A District Court may, on its own motion, refer a pending motion to a U.S. Magis-

trate–Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 72(a). Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate–Judge's Report and Recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater,* 8 F.Supp.2d 152, 154 (D.P.R.1998).

### C. *The Magistrate–Judge's Report and Recommendation*

#### 1. *Plaintiffs' Motion for Summary Judgment*

■ In their motion, plaintiffs argue that there is no controversy as to the fact that Contreras denied them due process by revoking their license without a predeprivation hearing. Accordingly, they request the Court to enter summary judgment finding Contreras liable for the due process violation, leaving only the damages to be determined by the jury. The Magistrate–Judge found that no controversy indeed existed as to the lack of a pre-deprivation hearing given that the defendants had admitted as much in their response. The Magistrate–Judge, however, then went on to find that a factual debate does exist as to whether an emergency situation was perceived by the defendants at the time of the order which could justify their actions. The Court disagrees.

At the preliminary injunction stage, the Court found that plaintiffs' due process rights had been violated by the defendants' failure to provide them with a pre-deprivation hearing (Docket No. 31 at pp. 22–26). *See Guillemard Gionorio v. Contreras Gomez,* 301 F.Supp.2d 122, 132–33 (D.P.R. 2004) (*"Guillemard I"*). The Court also found that defendants had not raised any indication that an emergency situation existed which required the immediate revocation of plaintiffs' license and that would provide justification for a post-deprivations hearing. *Id.* The Court later reaffirmed this finding when disposing of defendants' motion to dismiss (Docket No. 57 at 13–15). *See Guillemard Gionorio v. Contreras Gomez,* 322 F.Supp.2d 153, 159–60 (D.P.R.2004) (*"Guillemard II"*).

Although the Court made these findings at earlier stages of the case in which the evidentiary standard is less stringent and most facts must be accepted as pled, the Court finds that the defendants have not controverted the facts supporting such findings. *See Lewis v. Casey,* 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice ... In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts"). At the summary judgment stage, it remains uncontroverted that defendants did not provide plaintiffs with a pre-deprivation hearing. Furthermore, defendants have failed to establish that an emergency situation existed, or that they at least believed that to be the case, in order to justify the need for immediate action. If the defendants had submitted evidence to show this, then a trial-worthy controversy would exist. On the record as it stands, however, summary judgment is warranted in favor of plaintiffs on their due process claims.

■ Moreover, defendants' argument that the due process claim is moot because they eventually did provide plaintiffs with a hearing is without merit. The hearing may have rendered the need for a preliminary injunction moot, however, defendants must still answer for any damages they may have caused with their attempt to revoke plaintiffs' license without due process.

Therefore, the Court rejects this part of the Magistrate–Judge's Report and Recommendation, and grants plaintiffs' motion for partial summary judgment.

### 2. *Defendants' Motion for Summary Judgment*

#### a. *First Amendment Claim*

Defendants object to the Magistrate–Judge's finding that the plaintiffs proffered sufficient evidence to establish a *prima facie* case of political discrimination. They argue that the statements proffered by the plaintiffs are insufficient to show that defendants' actions were motivated by a discriminatory animus. The Court, however, disagrees.

■ In order to establish a *prima facie* case of political discrimination, plaintiffs must produce sufficient evidence to allow a rational jury to find that their political affiliation was a substantial or motivating factor behind the adverse action. *See, e.g., Baez–Cruz v. Municipality of Comerio,* 140 F.3d 24, 28 (1st Cir.1998). To meet this burden, plaintiffs need not produce direct evidence of a politically-based discriminatory animus. *See Acosta–Orozco v. Rodriguez–de–Rivera,* 132 F.3d 97, 101–02 (1st Cir.1997). Plaintiffs may establish a discriminatory animus with circumstantial evidence alone. *Id.* Plaintiffs must show that there is a causal connection linking defendants' conduct to their political beliefs. *See LaRou v. Ridlon,* 98 F.3d 659, 662 (1st Cir.1996).

■ Plaintiffs have proffered evidence, mostly through deposition testimony, that they were subjected to an investigation by the OIC and that the investigation was motivated by their political affiliation to the NPP. Furthermore, they have proffered evidence that the order of December 23, 2005 issued in retaliation for their filing of this complaint only a few days before. The evidence, the Court finds, is certainly sufficient to establish a *prima facie* case.

The burden then shifts to defendants, who must articulate a nondiscriminatory reason for the challenged conduct and who must establish by a preponderance of the evidence that they would have taken the same action. *See Rodriguez–Rios v. Cordero,* 138 F.3d 22, 24 (1st Cir.1998)(*citing Mount Healthy City Sch. Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Here, defendants' arguments founder.

■ Defendants argue that the investigation into plaintiffs' affairs was the result of a communication from the Puerto Rico Treasury Department indicating that UVI may have benefitted inappropriately in the performance of its contract with the Commonwealth Government. It was then that the OIC learned of the commission-sharing arrangement with the plaintiffs and began its investigation. Thus, it was because of this violation to the Insurance Code, and not because of their political affiliation, that the investigation commenced, and defendants would have investigated the plaintiffs regardless of their political affiliation.[4]

---

**4.** The Court notes that UVI also filed a similar complaint against defendants which the Court consolidated with this one (*See* Docket No. 11). UVI has since settled its claims with the defendants (Docket Nos. 99–101).

Plaintiffs' proffered evidence, however, is sufficient to overcome defendants' *Mount Healthy* defense. *See Padilla–Garcia v. Rodriguez*, 212 F.3d 69, 74 (1st Cir.2000)("The evidence by which the plaintiff established her *prima facie* case may suffice for a fact finder to infer that the defendant's reason is pretextual and to effectively check summary judgment.") More prominently, the Court finds that the comment Contreras made to OIC investigator Melvin Rosario ("Rosario") creates an issue of fact which must be submitted to a jury. Rosario states in his deposition (Docket No. 236, Exh. 14 at 33–34) that when Contreras ordered him to investigate the plaintiffs for the sharing of commissions, he told Contreras that it was a common practice in the industry, "everybody does it". Contreras replied that he would investigate "those NPP's". A reasonable jury could infer that by his referring to the plaintiffs by their political affiliation, Contreras very well could have revealed an improper motive behind the investigation. Thus, a triable issue of fact exists which precludes the entry of summary judgment.

█ As to the retaliation claim, defendants try to argue that Contreras was justified in issuing the order when he did because the plaintiffs had delayed the investigation by challenging the disclosure of certain documents. Thus, only when he possessed all the relative information could Contreras issue the order, and this complaint could not be a bar to his fulfilling his obligations as Insurance Commissioner. The Court, however, finds that a triable issue exists as to Contreras' motivation for issuing the order when he did. The timing of the order only days after Contreras was served, together with the evidence that he was investigating the plaintiffs motivated by a discriminatory animus, could lead a reasonable jury to find that the order is-

sued in retaliation for the filing of this complaint. Accordingly, summary judgment is inappropriate on plaintiffs' retaliation claims.

█ Finally, defendants argue that the Magistrate–Judge erred in not recommending that the Court dismiss the claims against Juarbe in her individual capacity inasmuch as there is no evidence to establish that she discriminated against the plaintiffs. The evidence on record shows, however, that Juarbe was part of the meetings where the defendants discussed the drafting of the December 23, 2003 order. Furthermore, once she took over the office of Insurance Commissioner, she continued to enforce the order and to oppose plaintiffs' efforts to appeal it and seek relief in this Court. Thus, a trial-worthy issue exists as to the motivation behind her decision to adopt and continue with Contreras' course of action. Accordingly, the entry of summary judgment in favor of Juarbe is precluded at this time.

### b. *Equal Protection Claim*

The Magistrate–Judge recommended that the Court dismiss plaintiffs' equal protection claims because she found that they had failed to establish that the statute regulating the insurance industry is not rationally related to a legitimate governmental purpose. *See U.S. Fire Ins. Co. v. Corporacion Insular De Seguros*, 853 F.Supp. 47, 49 (D.P.R.1994)("Whether an economic or social regulation violates the Equal Protection Clause is decided by determining whether the government classification is rationally related to a legitimate government interest."). Plaintiffs object, and the Court agrees, however, that the Magistrate–Judge erred in her recommendation because she applied an erroneous standard in her analysis. Mainly, the Magistrate–Judge applied the standard for an equal protection challenge of legislation

when plaintiffs' claims are rather predicated upon the theories of a "class of one" and selective enforcement.

 A plaintiff may successfully raise a claim as a "class of one", "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (*citing Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)). "Different treatment of a class of even one individual may be sufficient to state a claim under the Equal Protection Clause." *Lopez Rosario v. Police Dept.,* 126 F.Supp.2d 167, 174 (D.P.R.2000) (*citing Id.*). In like manner, to establish a claim of selective enforcement, plaintiffs must show that (1) they, "compared with others similarly situated, [were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato,* 60 F.3d 906, 909–10 (1st Cir.1995) (*citing Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen,* 878 F.2d 16, 21 (1st Cir.1989)).

 Plaintiffs claim that the defendants treated them differently than the rest of the insurance agents who were engaged in commission-sharing agreements. Plaintiffs have proffered evidence that the sharing of commissions was widespread among the insurance industry in Puerto Rico and that no other agent was subjected to such an intrusive investigation and punitive order as they were. Defendants argue that they did not treat the defendants differently than other similarly situated individuals because the sums of money shared between Lone Star and UVI were of such magnitude that no other broker or agent was "similarly situated". Thus, for the defendants the similarly situated individuals would not be insurance agents who share commissions, but rather insurance agents who share commissions in the amounts involved in plaintiffs' case.

The Court disagrees, however, with defendants' characterization of the class of similarly situated individuals. Insofar as the Insurance Code prohibits the sharing of commissions, it does so without any reference to the amount of commissions involved. Thus, the class of individuals subject to its provisions are those engaged in the insurance industry who enter into commission-sharing agreements. If the defendants are allowed to choose at will the amount of commissions that would constitute a violation of the statute, it could lead to an arbitrary, capricious, and constitutionally impermissible application of the statute. *See, e.g., Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352–53, 38 S.Ct. 495, 62 L.Ed. 1154 (1918) ("The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute *or by its improper execution through duly constituted agents.*"(emphasis added)).

Accordingly, the Court rejects this part of the Report and Recommendation and finds that plaintiffs' equal protection claims can survive summary judgment and may be presented to a jury.

### c. *Qualified Immunity*

 In their motion, the defendants argue that they are entitled to qualified

immunity in relation to plaintiffs' due process claims. The Magistrate–Judge recommended that the Court deny defendants' assertion of the qualified immunity defense because there is an issue of material fact as to the motivation behind defendants' conduct. In their objections, the defendants now attempt to argue that they are in fact entitled to qualified immunity as to *all* of plaintiffs' claims. Because the defendants did not properly raise these arguments before the Magistrate–Judge, the Court will consider their assertion of qualified immunity in relation only to the due process claim. *See Paterson–Leitch Company, Inc. v. Massachusetts Municipal Wholesale Electric Company,* 840 F.2d 985, 990–91 (1st Cir.1988)("The rule [Fed. R.Civ.P. 72(b)] does not permit a litigant to present new initiatives to the district judge. We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.")[5]

In order to determine whether a government official is entitled to qualified immunity, the Court must consider "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004).

As to the first prong of the qualified immunity inquiry, the facts of the case show that the December 23, 2003 order issued without notice and a hearing and purported to revoke plaintiffs' license without affording them an opportunity to be heard. This fact, if true, and it is undisputed that it is, constitutes a violation of plaintiffs' due process rights. Thus, plaintiffs easily meet the first prong.

Second, there can be no doubt that plaintiffs' due process rights to a pre-revocation hearing were clearly established when the violation occurred. See *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' "); *Fuentes v. Shevin,* 407 U.S. 67, 81–82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)("If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented.... The right to a prior hearing has long been recognized by this Court under the Fourteenth and Fifth Amendments."); *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)(The "root requirement" is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest."); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)("due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' before the termination becomes effective."); *Opp Cotton Mills v. Administrator,* 312 U.S. 126, 152–53, 61 S.Ct. 524, 85 L.Ed. 624 (1941)(Due process demands "the requisite hearing is held before the final order becomes effective."); *Beauchamp v. De*

---

5. Even if the Court were to consider defendants' arguments as to plaintiffs' First Amendment claims (political discrimination and retaliation), there are material issues of fact as to their motivation that would preclude the Court from granting them qualified immunity at this stage in the proceedings. These issues must be decided by a jury.

*Abadia,* 779 F.2d 773, 775 (1st Cir. 1985)("The district court's holding that [plaintiff] had a right to a hearing before his [medical] license could be revoked was correct."). Thus, the second prong is satisfied.

At the third prong, defendants argue that a reasonable official in Contreras' position would have been justified in revoking plaintiffs' license without prior hearing because a state statute authorized such action and the statute's constitutional validity had not been controverted at the time. Defendants' reliance on the state statute, however, is irrelevant. Even if the Court were to find, which it does not, that the state statute could effectively authorize the defendant to act in violation of plaintiffs' constitutional due process rights, a material issue of fact remains as to whether Contreras acted in a retaliatory or discriminatory manner when he issued the order. In other words, if it is decided that Contreras issued the order to revoke the license without prior notice and hearing in retaliation for the filing of this complaint and/or motivated by a discriminatory animus for plaintiffs' political affiliation, he would not be entitled to qualified immunity even if he acted in accordance with valid state law. *See Mihos,* 358 F.3d at 104–05 ("While the Supreme Court has removed from the qualified immunity analysis inquiries into whether a defendant knew that he was violating plaintiff's constitutional rights or acted maliciously to that end, this jurisprudence has not suggested that the 'objectification' of the qualified immunity inquiry somehow removes the intent element in the 'subset of constitutional torts [in which] motivation or intent is an element of the cause of ac-

tion.' "). The ultimate determination as to his motivation, however, must be made by a jury.

Furthermore, defendants have been unable to establish by any evidence now on the record that an emergency situation existed, or that at least they reasonably believed it existed, at the time of the order that could justify a pre-hearing deprivation. Without such a showing, the Court must find that, at this stage in the proceedings, defendants are not entitled to qualified immunity.[6]

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS in part** and **REJECTS in part** the Magistrate–Judge's Report and Recommendation. Accordingly, the Court **GRANTS** plaintiffs' motion for summary judgment and **DENIES** the defendants' motion.

IT IS SO ORDERED.

---

**6.** In this sense, the record has not been significantly factually developed to justify a pretrial defense of qualified immunity and the law of the case remains set by the denial of qualified immunity in this Court's prior decision. *See*

*Guillemard II,* 322 F.Supp.2d at 160–64, *affirmed Guillemard–Ginorio v. Contreras Gomez,* 2005 WL 3382638 (1st Cir. December 13, 2005)(unpublished opinion).